UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| KENDALL ELAINE MELVIN, | CIVIL ACTION NO. 1:16-CV-01417 |
| --- | --- |
| Plaintiff | |
| VERSUS | |
| BRIAN ANDERSON, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |
| Defendants | |

MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Doc. 29) filed by Defendants Deputy Brian Anderson ("Anderson"), Deputy Scott Wyatt ("Wyatt"), and Unknown Sabine Parish Sheriff's Deputies ("SPSDs") (collectively "Defendants"). Plaintiff Kendall E. Melvin ("Melvin") alleges an unconstitutional search and seizure under 42 U.S.C. § 1983, along with state law claims of false arrest and malicious prosecution. Defendants assert qualified immunity. Defendants argue that because the execution of the warrant issued for Melvin was reasonable, summary judgment should be granted in their favor.

Because Defendants were not objectively unreasonable in relying upon the arrest warrant, and Defendants' actions were not otherwise tortious or taken in bad faith, summary judgment should be granted.

I. Background

On September 30, 2015, Krystal Claybrook ("Claybrook") and Rachel Cordova ("Cordova") arrived at the home of Melvin and Chad Hiner ("Hiner") on Quail Road in Sabine Parish to pick up Claybrook's 19-month-old daughter. (Doc. 29-2, p. 1).

Hiner is the father of Claybrook's daughter. Claybrook knocked on the front door. (Doc. 29-2, p. 2). Melvin did not answer. (Doc. 29-2, p. 2). As Claybrook was returning to the vehicle, Melvin exited the house with Claybrook's daughter and her own children. (Doc. 29-2, p. 2). Melvin put all of the children in a vehicle and sped away. (Doc. 29-2, p. 2). Claybrook and Cordova followed. At some point during this "chase," Hiner appeared from bushes and jumped in Melvin's vehicle. (Doc. 29-2, p. 2). While in pursuit, Cordova called the Sabine Parish Sheriff's Office to report the incident. (Doc. 29-2, p. 2).

Anderson was on duty at the time and responded. (Doc. 29-2, p. 2). When Anderson met with Claybrook and Cordova, he requested from dispatch any outstanding warrants on Hiner. (Doc. 29-2, p. 2-3). There were no active warrants for Hiner at the time. (Doc. 29-2, p. 3). Anderson requested Claybrook and Cordova fill out voluntary statements. (Doc. 29-2, p. 3). Anderson then called Detective Lowe ("Lowe"), who advised Anderson to tell Claybrook and Cordova to arrive at the CID at 9:00 a.m. the next morning to discuss the incident. (Doc. 29-2, p. 3). Anderson relayed this information to Claybrook and Cordova, and also informed them that he would be periodically checking Hiner's residence throughout the night and following day. (Doc. 29-2, p. 3). Anderson also advised Claybrook and Cordova to contact the Sheriff's Office if they found out Hiner and Melvin had returned to the area. (Doc. 29-2, p. 3). Anderson then returned to his patrol duties, taking no further action. (Doc. 29-2, p. 3).

Claybrook met with Mike Tarver ("Tarver"), Justice of the Peace for Sabine Parish, on October 8, 2015. (Doc. 29-2, p. 3). She relayed the incident to Tarver and swore an affidavit for an arrest warrant for Melvin. (Doc. 29-2, p. 3). Tarver issued a warrant for Melvin's arrest (Doc. 29-2, p. 3-4), citing the offense of Interference with Child Custody under La. R.S. 14.45.1.

On the same day, Wyatt received a radio call informing him of the active arrest warrant for Melvin. (Doc. 29-2, p. 4). Wyatt went to Melvin's residence on Quail Road to execute the warrant. (Doc. 29-2, p. 4). Several other deputies (presumably, the SPSDs included in this lawsuit) were present, as Melvin had called in an unrelated burglary. (Doc. 29-2, p. 4). Wyatt arrested Melvin and escorted her to the Sabine Detention Center for booking. (Doc. 29-2, p. 4). Wyatt was not involved in the events of September 30, 2015. (Doc. 29-2, p. 4). Neither Anderson nor Wyatt provided Tarver with any information regarding the incident. (Doc. 29-2, p. 4). Anderson was not involved in Melvin's October 8, 2015 arrest. (Doc. 29-2, p. 4).

After Melvin was arrested, the warrant was found to be invalid. Specifically, the offense of Interference with Child Custody requires that the offender be a parent of the child, and that a custody order be in place. (Doc. 35-1, p. 2). Claybrook's affidavit clearly indicated that Melvin was not the child's mother, and did not indicate that there was a custody order in place. (Doc. 35-1, p. 3-4).

Under 42 U.S.C. §1983, Melvin claims Defendants violated her right to be free from an unreasonable seizure pursuant to the Fourth Amendment of the United States Constitution. (Doc. 35-1, p. 6). Melvin further argues qualified immunity

should be denied because Defendants did not act reasonably in executing an invalid arrest warrant. Finally, Melvin argues qualified immunity should be denied because Defendants "interjected themselves" into a civil matter.

II. Law and Analysis

A. Standards governing the motion for summary judgment.

Under Rule 56 of the Federal Rules of Civil Procedure, a court must grant summary judgment if the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Paragraph (e) of Rule 56 also provides the following:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
> (4) issue any other appropriate order.
> Fed. R. Civ. P. 56 (e)

Local Rule 56.2W (formerly 2.10W) provides that all material facts set forth in a statement of undisputed facts submitted by the moving party will be deemed admitted unless the opposing party controverts those facts. A dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a fact question controls the disposition of a summary judgment motion, we must 'review the facts drawing all inferences most favorable to the party opposing the motion.'" Herrera v. Millsap, 862 F.2d 1157, 1159 (5th Cir. 1959) (quoting Reid v.

4

State Farm Mut. Auto. Ins. Co., 784 F.2d at 578). A mere scintilla of evidence is insufficient to defeat a motion for summary judgment. See Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

The Supreme Court has held that "[w]here the defendant seeks qualified immunity, a ruling on the issue should be made early in the proceedings . . . where the defense is dispositive." Saucier v. Katz, 533 U.S. 194, 200 (2001). "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'" Credeur v. Martin, No. 06–0858, 2007 WL 1467087, *3 (W.D. La. May 17, 2007) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)); see also Hunter v. Bryant, 502 U.S. 224, 227 (1991) ("[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.").

Moreover, a movant's assertion of qualified immunity has important implications on the burden of proof:

> A good-faith assertion of qualified immunity alters the usual summary judgment burden of proof. We draw all inferences in favor of the plaintiff (i.e., the nonmovant), but once a state official (i.e., the movant) asserts the defense, the burden shifts to the plaintiff to show that the defense is not available. The plaintiff therefore bears the burden of showing a genuine and material dispute as to whether the official is entitled to qualified immunity.

Trent v. Wade, 776 F.3d 368, 376 (5th Cir. 2015) (internal citations and quotation omitted).

### B. No genuine issues of material fact preclude a Summary Judgment.

To their credit, the parties have no dispute regarding the events that occurred on September 30, 2015 and October 8, 2015. (Doc. 29-3, p. 1-3); (Doc. 35-2, p. 1-3).

5

The parties further agree that, for two reasons, Melvin could not have committed the offense of Interference with Child Custody (La. R.S. 14.45.1). (Doc. 29-3, p. 1); (Doc. 35-2, p. 1). First, the offense can only be committed by a parent without a right of custody. Second, the offense requires the presence of a court-issued custody order. Neither element was present in the underlying affidavit.

Moreover, the parties agree that Wyatt executed the arrest warrant without knowing the precise elements of the crime, and without independently researching, or otherwise validating, the warrant first. (Doc. 29-3, p. 2); (Doc. 35-2, p. 1). However, there is neither evidence nor argument that Wyatt acted in "bad faith," or the intent to knowingly violate the law.

These undisputed facts are all that is material to Defendants' motion.

### C. Wyatt violated Melvin's Fourth Amendment rights by arresting her pursuant to an invalid warrant.

A claim under 42 U.S.C. § 1983 requires that the plaintiff has been deprived of a right, privilege, or immunity provided by the Constitution or United States laws. The deprivation must have been committed by a person acting under the color of state law. See id. Section 1983 provides various types of immunity to state actors who violate a person's rights. See id. Liability of those acting under color of state law broadly turns upon whether they acted in "good faith." See Pierson v. Ray, 386 U.S. 547, 557 (1967). A court will look to an officer's probable cause and reasonableness under the circumstances. See Malley v. Briggs, 475 U.S. 335, 350 (1986).

The Fourth Amendment protects the right of the people to be secure in their persons and against unreasonable search and seizures. U.S. Const. amend. IV. An

unlawful arrest or other unreasonable seizure of the person is, in itself, a violation of the Fourth Amendment. See Henry v. U.S., 361 U.S. 98, 104 (1959). Although invalid warrants do not always result in constitutional violations, where there is both an invalid arrest warrant and no independent probable cause, an arrest violates the Fourth Amendment. See Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 568-69 (1971).

In this case, Melvin's Fourth Amendment right to be free from unlawful arrest was violated. Wyatt arrested Melvin pursuant to an invalid warrant. And Wyatt had no independent probable cause to make the arrest.

> D. **Summary judgment is warranted because Melvin has not established a genuine and material dispute as to whether Defendants were either potentially liable or entitled to qualified immunity.**

Defendants assert they are entitled to qualified immunity, and thus, may not be held liable for violating Melvin's Fourth Amendment rights. The Fifth Circuit has held "our qualified-immunity inquiry requires us to determine whether the officers' actions were objectively unreasonable, in light of clearly-established law at the time, and in light of the information the officers possessed." Wagner v. Bay City, Tex., 227 F.3d 316, 321 (5th Cir. 2000). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley, 475 U.S. at 341. As such, "qualified immunity represents the norm, . . . and courts should deny a defendant immunity only in rare circumstances." Romero v. City of Grapevine, Texas, 888 F.3d 170, 176 (5th Cir. 2018) (internal citations and quotation omitted).

An arrest is valid if the officer had reasonable, but mistaken, probable cause. See Mendenhall v. Riser, 213 F.3d 226, 230 (5th Cir. 2000). And the Fifth Circuit has consistently held as follows: "The law clearly does not require police officers to conduct legal research or consult an attorney to do so before they arrest individuals on what are *facially valid* warrants." Durant v. Lemoine, No. 05-1688, 2006 WL 3240768, *5 (E.D. La. Nov. 7, 2006) (emphasis added); see also Kugle v. Shields, 62 F.3d 395 (5th Cir. 1995) ("[T]he law does not require an arresting officer to go behind the warrant and question its validity."); Hamill v. Wright, 870 F.2d 1032, 1036 (5th Cir. 1989) (an officer need not determine the legal validity of every warrant, regular on its face); Duckett v. City of Cedar Park, Tex., 950 F.2d 272, 279 (5th Cir. 1992) ("We do not hold that police officers must conduct an investigation regarding the warrant's validity."); LaFrance v. City of New Orleans, CV 16-14439, 2017 WL 2364350, at *2 (E.D. La. May 31, 2017) ("Absent some indication that a warrant is in fact invalid, executing a facially valid warrant is not objectively unreasonable."); Chatterly v. Foree, CIV A 6:06CV185, 2006 WL 3317249, at *4 (E.D. Tex. Oct. 16, 2006) ("A police officer executing an arrest warrant that later turns out to be invalid is not liable based upon the fact that the warrant turned out to be invalid.").[1]

---

[1] A higher standard generally applies to officers who seek warrants themselves, however, as those officers are initiating the arrest, and thus have more responsibility concerning what charges are brought forth. See Malley, 475 U.S. at 339 ("[A]n officer who seeks an arrest warrant . . . is not entitled to immunity unless the officer has an objectively reasonable basis for believing that the facts alleged in his affidavit are sufficient to establish probable cause."); contra Michalik v. Hermann, 422 F.3d 252, 254-55 (5th Cir. 2005) (officers were granted qualified immunity because they "neither prepared, presented, nor signed the application for the search warrant").

Here, Wyatt did not seek the warrant. Wyatt was thus not subject to any higher standard of responsibility.

8

In support of qualified immunity, Defendants rely heavily upon Durant v. Lemoine, No. 05-1688, 2006 WL 3240768, *1 (E.D. La. Nov. 7, 2006). Durant involved a dispute between two warring landowners. Id. One of the landowners, Durant, purportedly hired an excavator operator to dig a trench, and told the operator to cross over the property of the other landowner, Clulee. Id. Clulee filed a trespass complaint against Durant (not the excavator) with a local justice of the peace. Id. Clulee apparently did not clarify that the excavator, and not Durant, had crossed Clulee's property. Id. The justice of the peace agreed that Durant has trespassed on Clulee's property, and issued an arrest warrant for criminal trespass. See id.

The warrant was defective in at least two respects. First, the warrant incorrectly cited a repealed criminal trespass statute. Id. at *4. The warrant also improperly called for Durant's arrest, rather than the issuance of a summons, as would have been appropriate under the Louisiana Code of Criminal Procedure. Id. (quoting La. Code Crim. Proc. art. 211.1) ("When a peace officer has reasonable grounds to believe a person has committed criminal trespass . . . he shall give a written summons instead of making an arrest if . . . (1) He has reasonable grounds to believe that the person will appear upon summons, and (2) He has no reasonable grounds to believe that the person will cause injury to himself or another or damage to property unless immediately arrested.")).

Nonetheless, Durant was arrested pursuant to the warrant. Id. at *2. Durant later sued not only Clulee, but also the sheriff and the arresting deputy (the "law enforcement defendants"). Id.

9

The law enforcement defendants argued that the arrest warrant fulfilled all of the technical requirements set forth in La. Code Crim. Proc. art. 203. Id. at *4. The law enforcement defendants also argued that they were entitled to immunity because the warrant was "facially valid." See id. at *4-5. According to this argument, the fact that the warrant cited a repealed statute did not "affect the validity of the warrant," because a warrant need only cite a statute, with the remaining responsibility for its contents falling upon the party issuing the warrant. See id. at *5. The court agreed, holding that "[t]he arrest warrant was facially valid-even though a repealed statute was cited," and that officers are not required to conduct legal research, or to seek legal advice, before executing arrest warrants. Id. at *5.

Melvin argues that Durant is distinguishable because here, the warrant was "facially invalid." See id. at *4. Melvin claims that in Durant, the warrant cited a repealed statute, and that could not be determined, on the face of the warrant, by the arresting officer. See id. Here, Melvin argues that Wyatt could have determined Melvin did not commit the cited crime simply by reading the warrant and affidavit, which disclosed facts making clear that Melvin could not have committed the offense.

The Court cannot agree with that proposed distinction. Here, to know Melvin did not commit the cited offense by merely reading the warrant and affidavit, Wyatt would have to have known the elements of Interference with Child Custody. In Durant, to know that Durant did not commit the cited offense by merely reading the warrant and affidavit, the law enforcement defendants would have to have known that the criminal trespass statute was repealed, and that the issuance of a summons

10

was the appropriate remedy. Neither legal infirmity made the warrants here or in Durant more or less "facially valid" from a legal perspective. In either circumstance, specific legal research or knowledge regarding the cited offenses would have been required. Under our binding precedent, courts should not require an arresting officer to conduct such legal research, or to possess such legal knowledge, as a predicate for qualified immunity, particularly where the arresting officer did not seek the warrant himself. According to this same long line of jurisprudence, nor should officers be required to analyze or investigate the facts contained in an arrest warrant to adjudge its validity.

Further, Melvin emphasizes the phrase "facially valid," and seems to construe it differently than the Durant court. And in fairness to Melvin, the phrase appears regularly in the jurisprudence. In this Court's view, however, exclusive emphasis upon that phrase misses the more important mark.

At the outset, the term "facially valid" is not precisely defined for purposes of the qualified immunity analysis. It can be – and here, arguably is being – construed in different ways. In one sense, a "facially valid" warrant could be defined as a warrant that is ultimately, legally valid by its terms. This could mean that, to be facially valid, the warrant must: (1) contain the technical elements of a warrant required by La. Code Crim. Proc. art. 203; (2) cite a valid and applicable offense; and (3) be based upon factual circumstances exhibiting probable cause to believe that the person named, in fact, could have committed the offense.

In another sense, however, "facially valid" could be defined to mean a warrant that would "seem" valid on its face to a reasonable officer acting in good faith, but without either specific legal knowledge or research, or further factual analysis or investigation. In the end, however, the warrant may be legally invalid. This could mean that the warrant must: (1) contain all required technical elements; (2) cite an offense that reasonably could exist and apply, again without specific legal research or knowledge; and (3) be based upon facts which could plausibly support a probable cause finding, again without detailed factual analysis. This definition seems closest to the one employed by the <u>Durant</u> court when it concluded that the disputed arrest warrant was "facially valid." It also seems closer to the one referenced by the Fifth Circuit and other courts in our circuit. By this definition, the warrant in this case was "facially valid."

Lastly, and most generally, a "facially valid" warrant could also be defined as a warrant that merely: (1) contains the technical elements of a warrant required by La. Code Crim. Proc. art. 203; and (2) is issued by an authorized party. This definition was proposed by the law enforcement defendants in <u>Durant</u>.

Here, the parties essentially dispute which definition applies. But again, that dispute misses the mark. Under a fair reading, our jurisprudence indicates that relying upon a "facially valid" warrant is not *objectively unreasonable. That* is the mark, for purposes of qualified immunity – whether an officer's conduct was "objectively unreasonable." <u>Poole v. City of Shreveport</u>, 691 F.3d 624, 627 (5th Cir. 2012). The jurisprudence also makes clear that a warrant can be facially valid even

12

if not, in the end, legally valid, and even if an officer's legal research or factual scrutiny may have revealed its invalidity.

With those clarifications in mind, the Court returns to the relevant question – whether Anderson was "objectively unreasonable" or "plainly incompetent." In addition to Durant, the Court finds the Fifth Circuit's decision in Turner v. Raynes, 611 F.2d 92, 93 (5th Cir. 1980), instructive on this point and, more importantly, controlling. In Turner, sheriff's deputies executed an arrest warrant issued by a justice of the peace that was later found to be legally invalid. 611 F.2d 92, 93 (5th Cir. 1980). The offense cited in the warrant – "violation of a peace bond" – did not exist. Id. The sheriff and his deputies were unaware that the offense did not exist. See id. There was no allegation that the sheriff acted in bad faith. See id. But the warrant, on its face, was plainly, legally invalid. See id.

The Fifth Circuit held that the sheriff was entitled to qualified immunity. See id. The court explained that "it would be a strange and unworkable rule that required a sheriff, at his peril, to determine the ultimate legal validity of every warrant regular on its face and issued by proper authority before serving it." Id. The court noted the sheriff's views that he merely "execute[d] an arrest warrant *valid and regular* on its face," and that he had no choice but to execute the warrant once it was issued. See id. (emphasis added). Finally, the court explained that there was no indication of record that the sheriff acted in bad faith or had notice of the warrant's invalidity. See id. The sheriff therefore "enjoy[ed] a qualified immunity from suit for official actions taken in good faith." Id.; see also Schexnayder v. Wilson, 427 So.2d 457, 458 (5th Cir.

13

1983) (an officer has a duty to execute a warrant without delay and without consulting a district attorney or anyone else); United States v. Leon, 468 U.S. 897, 898 (1984) (an officer is not expected to question the judgement of the authority who issues the warrant, and there is nothing more the officer can do to comply with the law than execute the warrant).

Here, the same principles apply. At the outset, Melvin's claims against Anderson should undoubtedly be dismissed. Melvin has conceded that Anderson was not involved in seeking or executing the arrest warrant. Therefore, Anderson cannot be liable for Melvin's claims of unconstitutional search and seizure, or for Melvin's state law claims for false arrest and malicious prosecution.

Melvin's claims against Wyatt are certainly more disputable. Ultimately, however, Melvin cannot raise a genuine issue regarding whether Wyatt was entitled to qualified immunity.

Melvin decries the fact that Wyatt (and most other officials involved) did not know the elements of the offense. But that fact does not raise a genuine issue regarding qualified immunity, as explained above. In Durant, officers executed a warrant which cited a repealed statute. In Turner, the sheriff executed a warrant which cited a nonexistent statute. Both courts applied qualified immunity.

Wyatt's reliance upon Turner's warrant was more reasonable than either scenario. The warrant contained all technical elements required by La. Code Crim. Proc. art. 203. The warrant was issued by an authorized party. Interference with Child Custody was an existing, albeit inapplicable, offense. By its title, and without

knowing its elements, the offense could reasonably have seemed applicable. The facts set forth in Claybrook's affidavit seemed relatively clear and cogent. Claybrook's affidavit states that Melvin absconded with Claybrook's child. Claybrook's affidavit contains no other indicia which would have made Wyatt's reliance upon it "plainly incompetent" absent knowledge of the specific elements of the offense, which is, again, inarguably *not* required. Turner and quite possibly others (including prosecutors) reached the same incorrect conclusion. "A government official's acts are not objectively unreasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights." Carroll v. Ellington, 800 F.3d 154, 169 (5th Cir. 2015). By this metric, Melvin has not raised a genuine issue.

The Court recognizes the possibility asserted by Melvin – that there may be circumstances in which an officer's reliance upon a legally invalid, but technically adequate arrest warrant, would not entitle the officer to qualified immunity. Turner perhaps gives some shape to that prospect by juxtaposing the terms "regular" and "valid." Turner, 611 F.2d at 93. Citing Turner, at least one court declined to discuss "facial validity" at all, and instead held that "an officer executing the warrant is entitled to qualified immunity if the warrant is *regular on its face* and the officer does not act in *bad faith or with notice of an infirmity of the warrant.*" Shelton v. Wise, A-07-CA-063 RP, 2008 WL 11411204, at *8 (W.D. Tex. Apr. 14, 2008), aff'd, 306 Fed.Appx. 60 (5th Cir. 2009) (emphasis added) (citing Hamill v. Wright, 870 F.2d

15

1032, 1036 (5th Cir. 1989)). This construction seems to center more closely upon whether the warrant *reasonably seemed* valid, rather than *actually was* valid.

Our jurisprudence does not explicitly clarify what these circumstances may be. It is unclear whether that could be clarified with any precision. Nonetheless, this Court holds only that, wherever the threshold of objective reasonableness may fall in this context, Wyatt's actions did not cross it here, particularly when compared to the actions of the officers in Turner and Durant.

Finally, Melvin argues that Wyatt is not entitled to qualified immunity because the arrest constituted an "interjection" into a "civil matter." The Court disagrees, factually and legally.

Nonetheless, in support of her argument, Melvin cites Wooley v. City of Baton Rouge, 211 F.3d 913, 913-27 (5th Cir. 2000). Defendants argue, correctly, that Wooley is distinguishable because it dealt with the warrantless search of a home, and seizure of a child pursuant to a custody order, which transpired because of a parental dispute regarding a custody agreement, and which was not supported by exigent circumstances related to the child's safety or welfare. See id. at 924-25. The dispute in Wooley remained civil, and never became criminal. See id. Ultimately, the court found the officers' actions objectively unreasonable because "the desire to avoid a domestic dispute cannot form a reasonable basis for depriving [a child] of his fourth and fourteenth amendment rights." Id. at 926.

Here, Defendants did not seize Claybrook's child. There was no custody order or agreement in place. Defendants did not search Melvin's home, or seize or transport

16

her or Claybrook's child, without a criminal warrant, but with the intent to resolve a civil custody dispute.

Instead, Wyatt executed a criminal arrest warrant. The fact that the warrant pertained to an alleged criminal charge arising from a dispute over a child does not make Wyatt's actions "interjection into a civil matter." Wyatt neither sought, nor had any prior dealings with the issuance of, that arrest warrant. Wyatt did not seize a child pursuant to a custody order without a required civil warrant. Wyatt therefore did not "interject" himself into a civil matter in any comparable manner to the circumstances described in Wooley. Wyatt performed his duty in a criminal matter. Wooley does not apply.

Because Melvin has failed to raise a genuine issue regarding whether Wyatt's (or the SPSDs') actions were objectively unreasonable, qualified immunity applies.

### E. Melvin's false arrest and malicious prosecution claims are barred by the Court's findings regarding qualified immunity.

Melvin also asserts claims for false arrest and malicious prosecution under Louisiana law. Once again, Melvin's claims against Anderson should be dismissed, as he was not involved in obtaining or executing the arrest warrant against Melvin. And the Court's findings that Wyatt and the SPSDs are entitled to qualified immunity also warrant dismissal of Melvin's false arrest and malicious prosecution claims.

It is well settled that, if an officer is "entitled to qualified immunity under § 1983, he also is entitled to qualified immunity against [a plaintiff's] state claim for false arrest." Marchbanks v. Franklin, 275 F.3d 45, *1 (5th Cir. 2001); see also

O'Dwyer v. Nelson, 310 Fed.Appx. 741, 745 n.4 (5th Cir. 2009) ("Because Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry . . . is applicable to both . . . federal and state law claims"); Gravolet v. Tassin, No. 08–3646, 2009 WL 1565864, *4 (E.D. La. June 2, 2009) (dismissal of state law claims against officers who were held entitled to qualified immunity on federal claims).

Similarly, Melvin's malicious prosecution claim fails. To recover for malicious prosecution, Melvin must prove, among other things, a lack of probable cause and malicious intent. See Piazza v. Mayne, 217 F.3d 239, 245 (5th Cir. 2000) (citing Miller v. East Baton Rouge Parish Sheriff's Dep't., 511 So.2d 446, 452 (La. 1987)). The Court has found no genuine dispute that Wyatt (and the SPSDs) reasonably relied upon the arrest warrant, and did not act in bad faith. These findings preclude Melvin's malicious prosecution claim. See Whittington v. Maxwell, 455 Fed.Appx. 450, 460 (5th Cir. 2011) (in a malicious prosecution case, applying the objective reasonableness standard of the defense of qualified immunity); see also generally Eisenbach v. Zatzkin, 728 Fed.Appx. 307, 312 (5th Cir. 2018) ("Because [an arresting officer] reasonably believed that he had probable cause to arrest [the plaintiff], [the officer] is entitled to official immunity on Eisenbach's malicious-prosecution claim.").

## III. Conclusion

Because Anderson was not involved in obtaining or executing the disputed arrest warrant, Melvin cannot state a viable claim against him. And because Melvin has failed to raise a genuine issue regarding whether Wyatt's (or the SPSDs') actions

in executing the arrest warrant were objectively unreasonable, Wyatt and he SPSDs are entitled to qualified immunity. Melvin's remaining claims are either unsupported for purposes of summary judgment, or should be dismissed under qualified immunity.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 24th day of July, 2018.

                                                Joseph H.L. Perez-Montes
                                                United States Magistrate Judge